UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHONA ALLISON, et al., <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> CRC INSURANCE SERVICES, INC., an Alabama Corporation, <br><br> Defendant/Counterclaim Plaintiff, <br><br> v. <br><br> CHONA ALLISON, et al., <br><br> Counterclaim Defendants. | No. 10 C 3313 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Counterclaim-Defendant Tim Turner ("Turner") moves to dismiss CRC Insurance Services ("CRC")'s counterclaim against him for breach of fiduciary duty (count IV), violation of the Illinois Trade Secrets Act (count VII), and tortious interference with contract (count V) arguing that this court is not the proper venue. For the following reasons, Turner's motion to dismiss is granted.

## I. BACKGROUND

CRC is a nationwide wholesale insurance broker. Given the nature of the services it provides, CRC invests considerable time, money, and effort in developing and maintaining relationships with each of its employees, existing clients, potential clients, and insurance markets.

Turner began working at CRC in 1999. Over the course of his employment by CRC, Turner served as President of the Chicago office, Regional Director, member of Board of Directors, and Co-President of CRC. Turner had access to CRC Confidential and Proprietary Trade Secret Information. On January 22, 2010, Turner resigned from CRC. Turner is now employed in California by Ryan Specialty Group ("RSG"), and he is one of the founders of Ryan-Turner Specialty, LLC ("RTS"). CRC alleges that Turner, along with Patrick Ryan and others, schemed to exploit CRC's business secrets to engineer a mass raid of CRC brokers and staff, and to solicit and accept business from CRC's customers.

After resigning from CRC, Turner filed a lawsuit in California state court, County of Los Angeles, seeking a declaration that certain restrictive covenants in the Agreement were unlawful under California law. On June 7, 2010, CRC cross-complained against Turner in California, alleging, *inter alia*, breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and intentional interference with contractual relations.

The litigation in this court was filed on May 4, 2010 by former employees of CRC in Chicago. This litigation seeks a declaration that certain covenants in their employment agreements with CRC are invalid. Turner is not a plaintiff to this litigation. On August 4, 2010, CRC named Turner as a counterclaim defendant asserting claims against him for breach of fiduciary duty, violation of the Illinois Trade Secrets Act ("ITSA"), and tortious interference with contract.

Actions between CRC, RTS/RSG, individual brokers, Turner, and/or Ed McCormack ("McCormack") are pending in Alabama, Pennsylvania, California, and this court. By agreement of the parties, the Alabama action against McCormack is stayed. The Pennsylvania action is also

stayed by agreement of CRC and RTS/RSG. CRC asked Turner to stay his action in California, but Turner has declined to do so. The parties, nonetheless, have agreed that the discovery in this case may be used in the California case.

## II. STANDARD OF REVIEW

A motion to dismiss based on a forum selection clause is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Muzmdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006). When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Faur v. Sirius Int'l Corp.*, 391 F.Supp.2d 650, 657 (N.D. Ill. 2005). The court may consider facts outside of the complaint when determining whether venue is proper. *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

## III. DISCUSSION

Turner argues that three of CRC's claims against him in this litigation – breach of fiduciary duty, ITSA violation, and tortious interference with contract – arise out of Turner's former employment relationship with CRC. This relationship is governed by an employment agreement ("Agreement") specifying that certain actions at law or in equity must be brought in California state courts. Pursuant to the terms of Turner's employment agreement:

> [a]ny action at law, suit in equity, or judicial proceeding relating to *the validity, construction, interpretation, and enforcement of this Agreement*, or any provision hereof, shall be instituted and determined exclusively in the courts of Los Angeles County and State of California. (emphasis added).

CRC argues that its counterclaims do not implicate "the validity, construction, interpretation and enforcement" of Turner's employment agreement. Instead, CRC contends that each of its counterclaims arose independent of Turner's contract, and would be congizable claims even if

Turner had no contract at all. Because CRC's counterclaims do not purport to rely on the existence of his contract for the basis of imposing liability, CRC asks that I deny Turner's motion.

Contractual forum selection clauses are *prima facie* valid, and the court will honor the parties' choice of venue absent compelling reasons to the contrary. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 12 (1972). The Seventh Circuit has held that the validity of a forum-selection clause is to be determined "by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears." *Abbott Labs. v. Takeda Pharmaceutical Co.,* 476 F.3d 421, 423 (7th Cir. 2007); *Accord Yavuz v. 61 MM, Ltd.,* 465 F.3d 418, 428 (10th Cir.2006); *but See Wong v. PartyGaming Ltd.,* 589 F.3d 821, 827-28 (6th Cir. 2009) (joining six circuits in applying federal law to determining the validity of a forum selection clause). Though not addressed by either party, I must apply California law, under which forum-selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable. *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 495-496 (1976). Forum-selection clauses are mandatory when they speak of exclusive jurisdiction, as is the case here. *N. Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1036-37 (9th Cir. 1995).

There is no dispute among the parties as to the validity of the forum selection clause found in the Agreement. Therefore, the only remaining question is whether the counterclaims against Turner fall within the scope of the forum selection clause. I find that they do.

### A. Count IV Alleging Breach of Fiduciary Duty Is Dismissed.

The counterclaim complaint alleges that "[a]s Co-president of CRC and member of its Board, Turner owed a fiduciary duty to CRC." Turner seeks to dismiss count IV, breach of fiduciary duty, on the ground that it is subject to the forum selection clause contained in the Agreement. While Turner contends that his fiduciary duties arose out of his contract, CRC argues that Turner's fiduciary duties arose automatically by statute. Specifically, CRC points to Alabama statute articulating general standards for directors:

> (a) A director shall discharge his or her duties as a director, including duties as a member of a committee: (1) In good faith; (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) In a manner the director believes to be in the best interests of the corporation. . .

ALA. CODE § 10-2B-8.30.

"Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). The parties cite to cases from various jurisdictions in support of their positions.

CRC relies on *ATR-Kim Eng Financial Corp. v. Araneta* where the court found that because the plaintiff based its claims entirely on fiduciary duties owed to the company, and not any other contractual duties that might have existed between the parties, the forum selection clause of the agreements did not apply. No. 489, 2006 WL 3783520, at *15 (Del. Ch. Dec. 21, 2006). There, the court noted that fiduciary duties are independent of any contract and can only be limited "by contractual provisions when 'the claims based on fiduciary duties touch on the obligations created in the [contract].'" *Id.* at n. 90 (internal citations omitted). In *ATR-Kim*, a

5

minority shareholder in a holding company sued the majority shareholder and chairman for breach of fiduciary duty for transferring some of the holding company's key assets to members of the chairman's family. *Id*. at *1. Similarly, in *Armco Inc. v. North Atlantic Insurance Co.,* 68 F.Supp.2d 330, 338-39 (S.D.N.Y. 1999), the court found that the breach of fiduciary duty and other claims were independent of the contract because the action arose out of a "large scale scheme to defraud" the plaintiff that had no bearing on the rights and duties at issue in the contract. Likewise, CRC argues that the breach of fiduciary duty alleged here does not arise out of Turner's contract, and accordingly, is not limited by the forum-selection clause. CRC, however, ignores the plain language found in its counterclaim complaint invoking duties defined by the Agreement.

CRC's counterclaim complaint alleges that as co-president, "Turner owed a fiduciary duty to CRC, including a duty of loyalty, a duty to act in CRC's best interest while acting as CRC's Co-President and Board member, and to use the authority and access bestowed on him as a result of his relationship with CRC only to serve the ends and best interests of CRC." The Counterclaim Complaint further asserts that Turner breached his fiduciary duty by "conspiring to solicit CRC employees and clients, notifying CRC customers that he would be working at RTS and thereby soliciting their business, and engaging in other actions contrary to the interests of CRC in connection with his acceptance of employment at RSG and/or RTS, direct CRC competitors." Regardless of the Alabama statute, the alleged breach of fiduciary duty claim still falls within the forum-selection clause because it arose out of Turner's contractual relationship with CRC. Based on the allegations in the counterclaim complaint, interpretation of the Agreement is essential as it invokes Turner's role as co-president and the "authority and access

6

bestowed on him as a result of his relationship with CRC." *See Zichichi v. Jefferson Ambulatory Surgery Center, LLC*, No. 07-2774, 2007 WL 3353304, at *5 (E.D. La. Nov. 7, 2007) (When doctor sued for breach of fiduciary duty, the court dismissed the claim based on the forum selection provision because "[i]t was the partnership agreement that set forth the rights duties and obligations of the partners, and those rights duties and obligations would have to be referred to and constructed in determining whether any fiduciary duty was breached.") Accordingly, CRC's claim for breach of fiduciary duty is subject to the forum selection clause, and is therefore dismissed.

**B. Count VII, Counterclaim Brought Pursuant to ITSA, Is Dismissed.**

Turner argues that the forum-selection clause applies to CRC's counterclaim for violation of the ITSA because (1) the counterclaim relates to obligations covered by the Agreement, and (2) Turner acquired the alleged trade secrets pursuant to the Agreement, and the employment relationship created and governed by the Agreement.

The Agreement incorporates statutory law relating to trade secrets:

> To the extent that said Confidential Information does rise to the level of a trade secret under applicable law, then, during the terms of the Employee's employment with CRC and thereafter for as long as said Confidential Information remains a trade secret under applicable law (or for the maximum duration provided under such law), Employee agrees that Employee will not, without prior written approval by CRC: (1) misappropriate; (2) use; (3) disclose to any third party, either directly or indirectly; or (4) aid anyone else in disclosing to any third party, either directly or indirectly, all or any part of such Confidential Information.

CRC, however, argues that because this claim does not require any reference to or interpretation of Turner's employment contract for liability, the forum-selection clause is inapplicable. CRC's argument is unavailing.

The Agreement specifically covers confidential information and trade secrets, and what Turner's duties are with respect to them. A claim based on the misappropriation of trade secrets will require construction of the Agreement, and is accordingly subject to the Agreement's forum-selection provision. In *Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, 709 F.Supp. 843 (N.D. Ill. 1989), the parties entered into a written Distributor Agreement that selected the forum for "any litigation under this Agreement." *Id*. at 845. The plaintiff filed suit in this district alleging violation of ITSA and breach of fiduciary duty. This court held that the claims were subject to the forum-selection clause because the Distribution Agreement defined the nature of the relationship between the parties, and further, that the defendant "obtained the information that it allegedly unlawfully disclosed as a result of [the plaintiff's] duties under the Distribution Agreement." *Id*. at 846. Likewise, here, the Agreement defines Turner's relationship with CRC and his responsibilities.

The fact that an ITSA claim could be asserted absent a contract is irrelevant. In *Digital Envoy, Inc. v. Google, Inc.*, 319 F.Supp. 2d 1377, 1378 (N.D. Ga. 2004), the parties entered a license agreement that included a forum-selection provision that "[a]ny lawsuit regarding this Agreement" would be filed in California. The defendant moved to dismiss or transfer when the plaintiff filed suit in Georgia for misappropriation of trade secrets. *Id*. The court rejected the plaintiff's argument that the action was not governed by the forum selection clause because it could have asserted its tort claims even in the absence of a specific agreement between the parties. *Id*. at 1380. The court held that "the fact remains that in this instance, there *is* an agreement; and one of the central issues in this case – if not *the* central issue in this case – is whether that agreement extends to [the defendant's] current use of [the plaintiff's] technology."

8

*Id*. Likewise, here the parties defined their relationship according to the Agreement, and CRC's claim is subject to the forum selection clause.

CRC argues that even if the forum selection clause does apply to the ITSA claim, I should hear the claim for policy reasons relating to the judicial economy of having the litigation determined in a single forum. I am unpersuaded by this argument. CRC has brought claims in California that arise out of the same facts as the claims at issue here, and must be tried in California. The interests of judicial economy suggest that, contrary to CRC's assertion, I dismiss this claim improperly brought in this District, and allow this claim to proceed in the Superior Court of Los Angeles County.

### C. Count V, Counterclaim Brought For Tortious Interference With Contract, Is Dismissed.

Turner argues that CRC's counterclaim for tortious interference with contract is subject to the forum selection clause because "it is, essentially, a claim for violation of the Agreement." The counterclaim alleges that Turner improperly interfered with the contractual relationships between CRC and its former employees by soliciting CRC employees to work at RSG and/or RTS. This solicitation, CRC alleges, caused the former employees to breach certain provisions of their employee agreements. Turner contends that CRC's claim for tortious interference with contract is a "repackaged version" of CRC's breach of contract claim against Turner, and therefore subject to the forum selection clause. The solicitation of CRC employees is specifically covered by the Agreement:

> Employee has agreed and represented to CRC that during the duration of Employee's employment by or association with Employer and for a period of two (2) years after the termination of Employee's employment by or association with

> CRC, the Employee will not solicit or encourage other employees of CRC or CRC Alabama to leave their employment with CRC or CRC Alabama.

Indeed, in the California litigation, CRC alleged that Turner breached the terms of the Agreement by willfully soliciting CRC employees.

CRC argues that Turner mischaracterizes its counterclaim. The primary allegation in CRC's tortious interference with a contract claim against Turner is that he interfered with the contracts of third parties, not that he violated his own contract with CRC. Accordingly, CRC asserts that Turner's own contract with CRC is entirely irrelevant to this claim, and no interpretation of Turner's contract is necessary to establish liability.

I am persuaded by Turner's argument and dismiss count V. In *Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993), the Ninth Circuit noted that it would "not accept the invitation to reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute." *Id*. at 1121. In *Lambert*, the parties entered into a contract for the purchase of Christmas tress which included a forum selection provision. *Id*. at 1112. The plaintiff sued for breach of contract, breach of implied warranty, misrepresentation, and unfair business practices following a dispute over alleged defects and argued that the forum selection clause did not apply to his tort claims. Rejecting the plaintiff's argument, the Court noted that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Id*. at 1121-22.

Likewise, here, the breach of contract claim brought in California involves the same operative facts as the tortious interference claim brought in this District. CRC unsuccessfully disputes that the tortious interference with contract claim involves the same operative facts as the

10

breach of contract action against Turner. Specifically, CRC contends that the operative facts in the breach of contract claim include the Agreement and evidence of the breach, whereas, the operative facts in the tortious interference with contract claim are the defendants' actions with respect to third-party contracts. Though the focus of the inquiry into the breach of contract claim and the tortious interference claim may differ, the underlying conduct is the same– Turner's alleged solicitation of other CRC employees. A determination as to Turner's interference with CRC employees is certainly related to the determination of whether Turner breached his own contract by soliciting CRC employees, and the overarching conduct, the solicitation of CRC employees, is identical.

CRC relies on *Karlberg European Tanspa, Inc. v. JK-Josef Kratz Vertriebsgesellschaft MbH*, 699 F.Supp. 669 (N.D. Ill. 1988) for the proposition that tortious interference claims are outside the scope of forum selection clauses. In *Karlberg,* the court found that because the plaintiff's tortious interference claims did not depend on any rights or duties created by the distributorship agreement, the forum selection clause did not apply. The distributorship agreement provided that the plaintiff would be the exclusive distributor in the United States of the defendant's products and "by no stretch of the imagination" could the claim for tortious interference be considered a manipulated breach of contract claim. *Id*. at 672. By contrast, here CRC has alleged that the same conduct behind the tortious interference claim constitutes a breach of contract in the California litigation. Accordingly, I dismiss count V of CRC's counterclaim as to Turner.

**IV. CONCLUSION**

For the foregoing reasons, Turner's motion to dismiss is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: December 6, 2010